UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CLARENCE ALBERT SAFFOLD, III,

                        Plaintiff,

        v.                                    Case No. 19-cv-1414-pp

SHANE PETERSON, PETER NOWAK,
JASON LARSEN, CODY GILBERT,
and JOSE SANCHEZ,

                        Defendants.

**ORDER GRANTING DEFENDANTS GILBERT AND SANCHEZ'S MOTION TO
JOIN (DKT. NO. 89), RESERVING RULING ON COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS
(DKT. NO. 86) PENDING EVIDENTIARY HEARING AND DIRECTING CLERK'S
OFFICE TO REMOVE CORPORATION COUNSEL AS DEFENDANT**

Clarence Albert Saffold, III, who is incarcerated at Racine Correctional

Institution and who is representing himself, is proceeding under 42 U.S.C. §1983

on Eighth Amendment claims against Milwaukee County Jail Corrections Officers

Shane Peterson, Peter Nowak and Jason Larsen ("County Defendants") and G4S

Secure Solution Officers Cody Gilbert and Jose Sanchez. The County Defendants

have moved for summary judgment on the ground that the plaintiff failed to

exhaust his administrative remedies before bringing this lawsuit. Dkt. No. 86.

Defendants Gilbert and Sanchez have asked to join that motion. Dkt. No. 89. The

plaintiff opposes the motion for summary judgment. Dkt. No. 97. The court

grants defendant Gilbert and Sanchez's motion to join the motion for summary

judgment and finds that an evidentiary hearing is required to resolve the County Defendants' motion for summary judgment.[1]

## I.    Facts

### A.    Procedural Background

The plaintiff filed his complaint on September 27, 2019. Dkt. No. 1. On January 21, 2020, before the court had screened the complaint, the plaintiff filed an amended complaint. Dkt. No. 14. The court screened the amended complaint and allowed the plaintiff to proceed against the County Defendants, G4S Officers Gilbert and Sanchez and Dr. Muhammad Khan from Wellpath Healthcare. Dkt. No. 17 at 35–36. The amended complaint alleges that the County Defendants were deliberately indifferent to the plaintiff's injuries and need for medical treatment. Id. at 24–25, 26–27, 29. He alleges that Officers Gilbert and Sanchez recklessly transported him from a doctor's appointment in a transport van

---

[1] On October 21, 2020, the Milwaukee County Office of Corporation Counsel and then-Deputy Corporation Counsel moved to extend the deadline to accept or reject service for the County Defendants. Dkt. No. 23. The court granted the motion. Dkt. No. 24. Because the motion was filed by the Office of Corporation Counsel, rather than any of the defendants, the clerk's office added "Corporation Counsel" to the docket as a "movant." When new defense counsel appeared for the County Defendants, however, they listed Corporation Counsel in the caption and as a party on whose behalf they were appearing. Dkt. Nos. 63, 64. Defense counsel also included Corporation Counsel as a party on whose behalf they filed the motion for summary judgment. Dkt. No. 86. The Milwaukee County Office of Corporation Counsel is not a party to, or a defendant in, this lawsuit. It is a department of Milwaukee County that "serves as chief legal counsel to all Milwaukee County departments, offices, boards, commissions and elected officials." See https://county.milwaukee.gov/EN/Corporation-Counsel. The plaintiff has asserted no claims against Corporation Counsel and it has no defenses to assert. The court will direct the clerk's office to terminate Corporation Counsel from the docket and caption of the lawsuit. Defense counsel should not include Corporation Counsel in the caption of future filings or as a party it represents in this lawsuit.

without fastening his seatbelt, causing him to suffer head, neck and back injuries. Id. at 23. The plaintiff also alleged that Officer Gilbert injured his foot when he pushed the wheelchair in which the plaintiff was riding into a wall. Id. at 22–23. The court did not allow the plaintiff to proceed on this claim because the allegations amounted to a claim that Officer Gilbert acted negligently (which is not sufficient to state a constitutional violation). Id. Finally, the court allowed the plaintiff to proceed on a claim that Dr. Khan provided inadequate medical treatment. Id. at 28. The plaintiff later moved to again amend or supplement the amended complaint, dkt. no. 29, and filed three motions asking the court to amend or reconsider the screening order, dkt. nos. 42, 45, 46. The court denied those motions. Dkt. No. 49.

The court entered a scheduling order setting a February 1, 2021 deadline for the defendants to file motions for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 50. On January 29, 2021, the County Defendants instead filed a motion to dismiss the amended complaint on that basis. Dkt. No. 53. G4S Officers Gilbert and Sanchez and Dr. Khan asked to join that motion. Dkt. Nos. 58, 59. The plaintiff responded to the motion to dismiss by citing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008), and asking the court to allow him to conduct limited discovery on the exhaustion issue. Dkt. No. 61. On May 5, 2021, the court approved the parties' stipulation dismissing Dr. Khan and dismissed all claims against him with prejudice. Dkt. No. 83.

On May 18, 2021, the court denied the defendants' motion to dismiss. Dkt. No. 85. The court noted that the defendants had filed their motion under Federal

Rule of Civil Procedure 12, rather than Rule 56, but that their reply brief pointed out that the plaintiff had not complied with Rule 56. Id. at 3. The court explained that because the defendants had attached to their motion "matters outside the pleadings," the court was obligated to either decline to consider those matters or to treat the motion as one for summary judgment. Id. (citing Fed. R. Civ. P. 12(d)). But because the defendants' motion to dismiss did not comply with the court's local rule governing motions for summary judgment, the court could not convert it into a motion for summary judgment. Id. (citing Civil Local Rules 56(b)(1)(C) and (b)(6) (E.D. Wis.)). The court allowed the parties to conduct limited discovery on the exhaustion issue and ordered the defendants to file a motion for summary judgment on exhaustion grounds by July 16, 2021. Id. at 5.

On the July 16, 2021 deadline, the County Defendants moved for summary judgment on exhaustion grounds. Dkt. No. 86. Officers Gilbert and Sanchez again asked to join that motion. Dkt. No. 89. But as the court noted in its July 19, 2021 text-only order, the County Defendants did not include the required statement of proposed material facts with their motion. Dkt. No. 93 (citing Civil L.R. 56(b)(1)(C)). The court gave the County Defendants one week to file the missing document, which they did. Id.; Dkt. No. 94. The court then ordered the plaintiff to respond to the motion for summary judgment within thirty days—by August 25, 2021. Dkt. No. 95. The plaintiff complied and timely filed his response to the defendants' motion. Dkt. Nos. 96, 97.

B.    Factual Background[2]

1.    *The July 11, 2019 Incident*

The plaintiff was a pretrial detainee at the jail from June 2, 2019, through September 3, 2019. Dkt. No. 94 at ¶3; Dkt. No. 96 at ¶2; Dkt. No. 96-1 at 4. On July 11, 2019, Officers Gilbert and Sanchez took the plaintiff to a scheduled appointment at the Froedtert Eye Institute. Dkt. No. 94 at ¶4. The defendants detail the events during this appointment as described in the officers' incident report. Id. at ¶¶4–14; Dkt. No. 90-3 at 12–13. The officers placed the plaintiff in a wheelchair, which is standard procedure for all inmates during medical appointments. Dkt. No. 94 at ¶5. Froedtert security escorted the plaintiff and officers to an elevator. Id. at ¶6. While boarding the elevator, the plaintiff's foot bumped the elevator wall. Id. The plaintiff says that his foot made "extensive contact with elevator wall, more than enough to cause severe pain during incident and long after." Dkt. No. 96 at ¶10. The plaintiff did not tell the officers or Froedtert security that the bump hurt him or his foot. Dkt. No. 94 at ¶7.

The officers took the plaintiff to his scheduled doctor's appointment. Id. at ¶8. During the appointment, the plaintiff asked the doctor to take an x-ray of his foot because of the bump in the elevator. Id. The officers thought the plaintiff was joking about the x-ray because "'there clearly was little to no contact that the

_____

[2] The plaintiff did not respond to each of the defendants' proposed findings of fact as the court instructed him to do. Dkt. No. 95 at 2. The defendants do not address this procedural shortcoming or assert that the court should consider their facts admitted for purposes of this decision. See Civil L. R. 56(b)(4). The plaintiff did file an unsworn declaration under 28 U.S.C. §1746 that disputes many of the defendant's facts. Dkt. No. 96. The court will consider the plaintiff's declaration but will deem admitted any uncontested facts that the defendants properly support with evidence.

5

inmate's foot made with the side of the elevator.'" <u>Id.</u> (quoting Dkt. No. 90-3 at 12). The officers told the plaintiff that, as G4S officials, they could not schedule an x-ray and that nursing staff at the jail would have to schedule the appointment. <u>Id.</u> at ¶10. The remainder of the plaintiff's appointment was without incident. <u>Id.</u> at ¶11.

The officers state in their report that during the drive back to the jail, they "drove normally, with no reported traffic accidents." Dkt. No. 90-1 at 13. They note the plaintiff claimed the officers did not buckle him into his seat and drove recklessly, causing him to suffer an injury. <u>Id.</u>; Dkt. No. 94 at ¶12. The officers state they told the plaintiff he could buckle himself in the same as other inmates and that only inmates wearing special restraints cannot buckle themselves in. Dkt. No. 94 at ¶13. The plaintiff was in a normal belly restraint with handcuffs and ankle restraints, which did not prevent him from buckling himself in. <u>Id.</u> at ¶¶13–14.

### 2. *The Jail's Grievance Procedures*

The jail's Inmate Handbook outlines the grievance and appeal process. Dkt. No. 94 at ¶¶15–16; Dkt. No. 90-1. The handbook states that inmates "may file a grievance" if they believe they "are being treated unjustly or unfairly." Dkt. No. 90-1 at 3. The grievance must address either "an issue personally affecting an inmate in the area of health, welfare, facility operation or inmate services" or "a complaint of oppression or misconduct by an employee." <u>Id.</u> The handbook instructs inmates to "file a grievance only after you have addressed the problem with the pod officer and are not satisfied with the result." <u>Id.</u> (emphasis omitted).

6

To submit a grievance, inmates are required complete a written grievance form and place the completed form in the grievance box or give it to an officer if the box was unavailable. Id. A jail representative reviews and answers the grievance. Id. The handbook provides the following procedure for appealing a grievance:

> 4. If you are dissatisfied with the result you may appeal the decision by writing supporting documentation including full names of witnesses. The Captain will review and rule on your appeal.
>
> 5. Once the Captain has ruled, and more evidence is available you may make one final appeal to the Jail Commander or his/her designee. This appeal must include all previous writings and supporting testimony and evidence and the new found [*sic*] information/evidence. This decision/action is final.

Id.

The defendants explain that inmate grievances about medical care filed in 2019 were investigated by the jail medical staff. Dkt. No. 94 at ¶47. A corrections official reviewed the findings and recommendations of jail staff related to any grievance. Id. at ¶48. The defendants assert that if the plaintiff was not satisfied with written findings and recommendations by staff, "he was informed he could appeal in writing the findings of the medical staff to the Captain for the final level of appeal." Id. at ¶49. Once the captain made a ruling, "if more evidence were presented, Plaintiff could have taken his appeal and all previous writings to the Jail Commander." Id. at ¶50. Any grievances that were *not* related to medical care were investigated by the jail correctional staff, and if the plaintiff was not satisfied with a finding or recommendation regarding such a non-medical grievance, he could appeal the "findings of the reviewing correctional staff

7

to the Captain for a final appeal." Id. at ¶51. Again, for non-medical grievances, once the captain ruled, "if more evidence were presented, Plaintiff could have taken his appeal and all previous writings to the Jail Commander." Id. at ¶¶51–52.

On June 2, 2019—the day the plaintiff arrived at the jail—an officer at the jail interviewed the plaintiff and completed a Classification Interview Form. Dkt. No. 90-2. The officer (not a defendant) checked a box indicating that the plaintiff "has been given a copy of the Inmate Handbook (Rules and Regulations)." Id.; Dkt. No. 94 at ¶¶23–24. The form does not say what date the plaintiff was given the handbook; next to "Date:" the words "Given @ Changeover" appear. Dkt. No. 90-2. The plaintiff avers in his declaration, however, that he did not receive a handbook when he was booked into the jail "or any time here after." Dkt. No. 96 at ¶3. He avers that he "was not made fully aware of the grievance process when attempting to grieve an issue with jail staff." Id. at ¶4. He avers that he filed his grievances "with little to no knowledge of the grievance process." Id. at ¶5.

### 3. *The Plaintiff's Grievances*

The defendants provided a grievance log, which shows that between July 11 and August 22, 2019, the plaintiff filed sixteen grievances. Dkt. No. 90-3 at 1.

At 6:00 p.m. on July 15, 2019 (four days after the incident described in the amended complaint), the plaintiff submitted a grievance alleging that while Officer Larsen was escorting him from the clinic, the plaintiff asked if the plaintiff could be "assisted" by a wheelchair "due to [his] foot injury." Dkt. No. 90-3 at 3. The grievance alleged that the plaintiff "was told no but I can take something out of my hair instead." Id. The grievance stated that the plaintiff's foot was in pain and

8

that this made it "extremely difficult to walk." <u>Id.</u> The jail received this grievance on July 23, 2019—eight days later—and a representative responded on July 29, 2019. <u>Id.</u> at 2. The response designated the disposition of the grievance as "Unfounded," and stated, "If Medical thought you needed a wheelchair they would have issued you one." <u>Id.</u> On the line provided for the signature of the complainant, the words "Ref to sign" appear. <u>Id.</u>

The plaintiff filed a second grievance at 9:01 p.m. on July 15, 2019, dkt. no. 90-3 at 5, which the jail did not receive until July 23, 2019, dkt. no. 90-3 at 4; dkt. no. 94 at ¶28. This second grievance alleged that the plaintiff asked Nurse Brittany (not a defendant) to check his blood pressure because he was not feeling well; it alleged that the nurse said that "she'll see" and left the pod. Dkt. No. 90-3 at 5. A jail representative responded to the plaintiff's grievance on July 29, 2019, stating that the grievance would be forwarded to "Medical for a response." Dkt. No. 90-3 at 4. Although the medical unit's response is not included in the record, the plaintiff's inmate grievance log indicates that the medical unit determined the plaintiff's grievance was unfounded. Dkt. No. 90-3 at 1.

At 11:18 p.m. on July 22, 2019, the plaintiff filed a grievance about Officers Gilbert and Sanchez's alleged actions during and after his July 11, 2019 appointment at the Froedtert Eye Institute. Dkt. No. 94 at ¶30; Dkt. No. 90-3 at 11. The grievance began by stating that the plaintiff "already filed a grievance, but it[']s still in the box." Dkt. No. 90-3 at 11. The grievance alleged that on July 11, 2019, Gilbert and Sanchez were transporting the plaintiff, that they arrived at the Froedtert Eye Institute between 2:30 and 2:45 p.m. and that they were on the elevator between 2:45 and 3:15. <u>Id.</u> The grievance asserted that the three "were

supposed to get off on the 3rd floor but mistakenly got off on the 2nd," and that in the process, Gilbert was pushing the plaintiff in the wheelchair and "crashed [his] left foot into the elevator siding." Id. The grievance said that the plaintiff "spoke to officers and medical about being x rayed but never received it." Id. The grievance stated, "As well, while in back of the van, [the plaintiff] wasn't strapped in the seatbe[l]t and as [a] result [he] was tossed around due to reckless driving." Id. The plaintiff that he banged his head twice and jerked his neck. Id. He alleged that he "spoke with doctors and was waved off (concussion [and] neck injuries)." Id. The plaintiff said he asked for crutches but "wasn't granted assistance." Id. The grievance alleged that the plaintiff could not stand on his injured foot, could not climb or descend stairs and could not sleep without experiencing neck and head pain. Id.

The jail received this complaint on July 23, 2019. Dkt. No. 90-3 at 10. On July 29, 2019, a jail representative responded to the plaintiff's grievance, stating that it would be "submitted to a Supervisor for a response." Dkt. No. 94 at ¶31; Dkt. No. 90-3 at 9–10. On August 7, 2019, the supervisor responded to the grievance and delivered his report to the plaintiff. Dkt. No. 90-3 at 8. The supervisor's response echoed much of the officers' incident report. Id.

> I spoke with G4S regarding your complaint. Their policy states that all inmates that are escorted to a facility for a medical appointment are placed into a wheelchair for your safety and their safety and for the ease of mobility throughout that facility. They did state that your wheelchair hit the wall of the elevator and at the time of the incident, you did not make them aware of any injury but brought it up to the doctor later on requesting an x-ray. An x-ray would have to be ordered by a provider. G4S cannot authorize an x-ray.

> On Tuesday, August 6, 2019, I spoke with RN Brittany who stated that upon your return to the Milwaukee County Jail, nothing was

mentioned by you to the RN. I did ask her to assess your stated injuries on this date. Per RN Brittany, you are still stating that you have foot pain and that she has made a provider referral for you. She also stated that you have seen two providers since this incident and prior to August 6, 2019 and there is nothing documented regarding your stated injuries.

Regarding the stated injuries you received while being transported in the van, it's G4S's policy to advise you that there are seatbelts available to you to use at your own discretion. Per their policy, the G4S officers will not enter into a van and reach over you to buckle you in, for their safety. As to your complaint about reckl[]ess driving, the G4S Officers stated "we drove normally, with no reported traffic accidents". If you continue to have foot and head pain due to the stated injuries you received, please complete a pink and white medical slip to have your issues addressed.

Id.

The plaintiff filed several additional grievances about the injuries he allegedly sustained on July 11, 2019. Dkt. No. 94 at ¶37; Dkt. No. 90-3 at 36, 38. His July 29, 2019 grievance alleged that jail staff did not provide him an x-ray, crutches or physical therapy. Dkt. No. 90-3 at 36. The plaintiff said he had been told that he would receive physical therapy, but that it was July 29, 2019 and he "still ha[dn't] received any proper medical assistance." Id. He stated that he had "to beg nurses for an ace bandage," which was the only treatment he'd been given for his foot. Id. He said he had not received any treatment for his head or neck pain, yet medical staff charged him for merely explaining his issues. Id. He stated that he had "filed several grievance[s] and placed many medical requests in and still [he'd] yet to be treated precisely." Id. He stated that jail staff neglect had "left [him] no other option other than to file a civil against all parties." Id. The plaintiff filed another grievance on August 8, 2019, alleging that he "ha[d] again spoken with staff about [his] injuries," and jail staff informed him he would receive x-rays

for his foot. Id. at 38. He stated that he "only receive[d] pain meds from them and not x-rays and/or physical therapy which both have been promised." Id. The plaintiff alleged that his neck injury had progressed to his back, which he believed was "due to the lack of medical attention." Id. He stated that he was "forced to proceed civilly [*sic*]" because of the lack of treatment. Id.

On August 16, 2019, a jail representative responded to the July 29 and August 7, 2019 grievances, indicating that they would be forwarded to the medical unit. Id. at 35, 37. A week later, on August 23, 2019, the plaintiff signed that he had received the disposition report for those grievances. Id. The medical unit's full responses to these grievance are not in the record, but the grievance log indicates that the medical unit determined the first of these two grievances was unfounded and "Corrected" the issue he addressed in his second grievance by providing him an x-ray of his foot on August 13, 2019. Id. at 1; Dkt. No. 94 at ¶39.

At 11:43 p.m. on August 14, 2019, one day after receiving the x-ray, the plaintiff filed a grievance complaining that he should have received an x-ray of his foot *and* back, not just his foot. Dkt. No. 94 at ¶40; Dkt. No. 90-3 at 43. He alleged that the doctor who conducted the x-ray (not a defendant) did not cover his groin with a lead protector until after the first picture was taken. Dkt. No. 94 at ¶40; Dkt. No. 90-3 at 43. Staff responded to this grievance on August 26, 2019, indicating that it would be submitted to Medical for a response. Dkt. No. 90-3 at 42. The medical unit's response is not in the record, but the grievance log indicates that it found the complaint unfounded. Id. at 1.

The next day, August 15, 2019 at 11:45 p.m., the plaintiff submitted another grievance complaining that jail staff still had not addressed his injuries from July 11, 2019. Dkt. No. 94 at ¶42; Dkt. No 90-3 at 46. He reiterated that doctors had told him that he would receive x-rays and physical therapy, but complained that he received only one physical therapy session and had "yet to be told what is the problem." Dkt. No 90-3 at 46. He did not mention the x-ray of his foot he received on August 13, 2019, or the grievance he filed on August 14, 2019 (about his groin not being protected during the x-ray). Id. He alleged that medical staff gave him only Tylenol and ibuprofen for his pain, "which does nothing for this." Id. On September 2, 2019, jail staff responded that it would forward the grievance to medical. Id. at 45. Two weeks later, medical provider Wellpath responded that the plaintiff's grievance was unfounded. Id. at 49. The response stated that the plaintiff was "seen by physical therapy after ordered by the provider, and had an x-ray which was normal. Physical therapy then did a follow up from [the] initial evaluation treatment was provided as needed." Id.

On August 22, 2019, the plaintiff filed a grievance responding to Wellpath's responses to his grievances from July 15 (the one against Nurse Brittany, not the one against Officer Larsen) and July 22, 2019. Dkt. No. 90-3 at 53. He alleged that he had reported his injuries to jail staff and medical staff in the evening on July 11, 2019. Id. He said that he did not receive pain medication until July 13, 2019, and only in response "to a medical emergency request." Id. He said that a doctor (not a defendant) assessed him on July 14, 2019, and ordered him pain medication that he did not receive until July 21, 2019. Id. The plaintiff questioned why it took so long for him to receive the medication after that assessment. Id.

The plaintiff alleged that "nurses were denying [him] the meds every time [he] asked were the prescriptions there." Id. He said he had numerous receipts from his requests for healthcare that nurses had signed and asserted that "these are attempts to cover you all's tracks." Id. He asked that "someone provide accurate information please." Id. Jail staff responded by denoting the disposition of the grievance as "non-grievable," indicating that both the August 14 and August 15 grievances "were already given a response" that they were "unfounded." Id. at 51–52.

According to the defendants, the plaintiff did not appeal any of the dispositions of these grievances to the jail captain or the jail commander under the process descried in the Inmate Handbook. Dkt. No. 94 at ¶¶53–54. The County Defendants asserted that none of them escorted the plaintiff to or from any of his medical appointments. Id. at ¶¶57–59. They contended that none of the plaintiff's grievances "show any level of personal involvement" of the County Defendants, and that none of the County Defendants were "personally involved in any of Plaintiff's medical decisions or treatment." Id. at ¶¶56, 60–62.

4.    *The Plaintiff's Declaration*

The plaintiff provided the court with a declaration, asserting that he filed a grievance against Officer Peterson "for his conduct on July 11, 201, the time relevant to this matter." Dkt. No. 96 at ¶6. He did not explain what the grievance alleged or how Officer Peterson was involved in the plaintiff's medical appointment or treatment of his alleged injuries. He also averred that he filed a grievance on July 14, 2019, "against Officer Nowak for his conduct on July 13, 2019." Id. at ¶14. He did not explain what Officer Nowak did or what conduct the

plaintiff grieved. The plaintiff averred that he filed a "Prisoner/Inmate Request addressing Officers' conduct on or around July 11, 2019," but he did not specify which officers' conduct these requests addressed. Id. at ¶7. He averred that he submitted "both Inmate/Prisoner Request and grievances in an attempt to grievance [sic] incidents with all defendants while at [the jail] between dates of July 11, 2019 and September 3, 2019." Id. at ¶11. The plaintiff averred that he did not receive a response to two grievances he filed against Officers Peterson and Nowak, "to be able to appeal or proceed furtherly." Id. at ¶12. The plaintiff asserted that the Inmate Handbook "does not instruct on what to do if you do not receive a response to a grievance you submitted." Id. at ¶13.

The plaintiff reiterated his contention that Officers Gilbert and Sanchez injured him during and after his July 11, 2019 appointment at the Froedtert Eye Institute. Id. at ¶8. He averred that his "foot made extensive contact with elevator wall, more than enough to cause severe pain during incident and long after." Id. at ¶10. The plaintiff asserted that he told the officers "that [he] was hurt from this conduct," but that they did not report his complaint to jail staff. Id. at ¶9.

The plaintiff's opposition brief indicated that the defendants' exhibits "do[] not contain all grievances or forms of grieving (prisoner/inmate request forms) [he] submitted while [he] was at [the jail]." Dkt. No. 97 at 2. The plaintiff attached to his declaration three Prisoner Requests. Dkt. No. 96-1 at 1–3. All three were addressed to "Administration." Id. The first of these requests is dated July 11, 2019, and states, "Officer Gatts + Dates I talked to about my injuries also Peterson. I was fin[ally] seen at/or around 7:00pm." Id. at 1. The plaintiff recounted his injuries allegedly sustained on July 11, 2019 and said that Nurse

15

Brittany told him the medical unit would see him the next day. Id. The plaintiff said that "Officer Young Trainee" called the clinic, "and she said they said [he] wouldn't" (presumably, that he would not be seen). Id. The "Responding" section of the document is blank.

The plaintiff's second request was dated July 17, 2019, was addressed to "Administration" and asked "to speak to someone in regards to" the injuries the plaintiff allegedly sustained on July 11, 2019. Id. at 2. The plaintiff said he had been "asking for assistance" since July 11 and had been forced to move around on his injured foot without a crutch or wheelchair. Id. He said this was further injuring his foot, and "the Clinic isn't attending to [his] injury as it needs to be assisted." Id. Below the plaintiff's recount, someone (in what appears to be handwriting other than the plaintiff's) wrote "Fill out a pink & white for medical." Id.

The third request is addressed to "Administration" and is not dated. It reiterated the July 11, 2019 incident with Officers Gilbert and Sanchez but stated that the events "occurred on 6/11/19." Id. at 3. Below the plaintiff's recount someone (again, in handwriting different from the plaintiff's) wrote, "Fill out a pink & white." Id. In the "Responding" section is the notation "response received 7/19/19." Id.

## II.    Discussion

### A.    Summary Judgment Standard

A party is entitled to summary judgment if he or she shows that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The nonmovant must provide more than *allegations* to defeat a motion for summary judgment; he must present enough admissible *evidence* to create a genuine issue of fact. See Hoeft v. Kasten, 691 F. Supp. 2d 927, 931 (W.D. Wis.), aff'd, 393 F. App'x 394 (7th Cir. 2010) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

B.    Exhaustion

Under the Prison Litigation Reform Act, an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Woodford v. Ngo, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an inmate must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

17

allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015) (citing Woodford, 548 U.S. at 93), overruled on other grounds by Henry v. Hulett, 969 F.3d 769, 774 (7th Cir. 2020). That means that if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claims. See Perez v. Wis. Dep't of Corrs., 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" does not satisfy the PLRA, Farina v. Anglin, 418 F. App'x 539, 543 (7th Cir. 2011) (citing Booth v. Churner, 532 U.S. 731, 739 (2001), and Dole, 438 F.3d at 809), and there is no "futility exception" to exhaustion under the PLRA, Perez, 182 F.3d at 537 (citing Greene v. Meese, 875 F.2d 639, 641 (7th Cir. 1989)); see Booth, 532 U.S. at 741. Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. See Pavey, 544 F.3d at 740–41 (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

    C.    Analysis

Recall that the County Defendants—Shane Person, Peter Nowak and Jason Larsen—filed the summary judgment motion. Dkt. No. 87. Cody Gilbert and Jose Sanchez—the G4S contract employees who transported the plaintiff on July 11, 2019—asked to join the motion. Dkt. No. 89.

The defendants assert that the plaintiff did not exhaust his administrative remedies before filing the lawsuit because he failed to file grievances against anyone but Larsen and filed to appeal the disposition of his grievances against Larsen. Dkt. No. 87 at 7. They contend the plaintiff "understood the process and took advantage of the grievance process as evidenced by his receipt of the handbook and the number and nature of the grievances he lodged." Id. (citing Dkt. Nos. 90-2, 90-3). They argue that the plaintiff "even appeal[ed] the responses to two of his grievances." Id. (citing Dkt. No. 90-3 at 53). They assert, however, that the incidents the plaintiff described in his various grievances make no allegations against *jail corrections staff* (other than his assertion that Larsen didn't give him a wheelchair). Id. The County Defendants assert that the plaintiff made many grievances about *health care personnel*, but no complaints about corrections officers. Id. at 8.

> 1.   *Officers Gilbert and Sanchez*

It is undisputed that the plaintiff grieved Gilbert and Sanchez's actions from July 11, 2019. It also is undisputed that the plaintiff did not appeal the denial of those grievances to the jail captain or commander, as the jail's administrative process requires. That appeal process is laid out in the Inmate Handbook, which the evidence shows the plaintiff received on June 2, 2019. Dkt. No. 90-2. The plaintiff swears, however, that he *did not* receive the handbook, "was not made fully aware of the grievance process" and did not know he had to appeal the denial of his grievances to exhaust his administrative remedies. Dkt. No. 96 at ¶¶3–4. In effect, the plaintiff asserts that the administrative remedies

were unavailable to him at the jail, and the court should excuse him from not exhausting his administrative remedies by appealing his denied grievances.

Inmates are required to exhaust only "available" administrative remedies. 42 U.S.C. § 1997e(a); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). An administrative review system may be deemed unavailable when it is "so opaque that it becomes, practically speaking, incapable of use." Ross v. Blake, 578 U.S. 1174, 136 S. Ct. 1850, 1859 (2016). In other words, when the administrative remedy provided is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." Id. The Inmate Handbook is not "opaque," confusing, or "unknowable." It provides an unambiguous five-step grievance procedure, including instructions on appeals. Dkt. No. 90-1 at 3. The plaintiff does not assert that the handbook's language rendered his administrative remedies unavailable.

Administrative remedies may also be "unavailable," however, if jail staff's "affirmative misconduct" or omissions prevented inmates from pursing their administrative remedies. See Dole, 438 F.3d at 809. For example, if jail staff failed to inform an incarcerated person of the grievance process, the process may be deemed unavailable to that incarcerated person. See Brown v. Garth-Dickens, No. 16-cv-241-PP, 2018 WL 1695511, at *6 (E.D. Wis. Mar. 30, 2018) (citing Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016)). It is the jail's duty to inform incarcerated persons about the grievance process. Hernandez, 814 F.3d at 842 (citing Kaba, 458 F.3d at 684, and King, 781 F.3d at 896).

The plaintiff has declared under penalty of perjury in his 28 U.S.C. §1746 declaration that he did was not given the Inmate Handbook while at the jail, was

not made "fully aware" of the grievance process when he was trying to file grievances and that all the grievances he filed were with "little to no knowledge of the grievance process." Dkt. No. 96 at ¶¶3-5. If this is true, the plaintiff may not have been aware that he was required to appeal denied grievances to exhaust his administrative remedies, or may not have known how to appeal. It would not matter how clear or unambiguous the handbook is if the plaintiff did not have it and did not know what the process was. The record contains both evidence that the plaintiff was given a copy of the Inmate Handbook (which would doom his claims) and that he was not given the handbook[3] (which would excuse his failure to exhaust).

That the plaintiff filed grievances does not show he also knew about the *appeals* process described in the handbook and neglected to follow those procedures. The defendants assert the plaintiff did appeal "the responses to two of his grievances." Dkt. No. 87 at 7. In support of this argument, they cite Grievance 19-002004. Id. But it is not clear that Grievance 19-002004 was an "appeal." Grievance 19-0020024, dated August 22, 2019, is another Milwaukee County Jail Inmate Grievance Form. Dkt. No. 90-3 at 53. The plaintiff said in the first line, "This is in response to Wellpath's response to grievance #'s 19-001687

---

[3] One might argue that the plaintiff's declaration that he did not get a handbook is self-serving and conclusory. But the Seventh Circuit has repeatedly explained that affidavits and other written statements are "by their nature self-serving," and that that fact "must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." Hill v. Tangherlini, 724 F.3d 965, 967 (7th Cir. 2013) (citations omitted). See also, Sanders v. Melvin, 873 F.3d 957, 960 (7th Cir. 2017) ("It is dismaying to see plausible allegations labeled 'self-serving' and then swept aside after *Hill* and its predecessors such as *Payne v. Pauley*, 338 F.3d 767 (7th Cir. 2003).").

and 19-001661." Id. It is not addressed to the jail captain or commander and does not contain "supporting documentation," as the jail's policy requires for appeals. See Dkt. No. 90-1 at 3. It does not request reconsideration—it ends by saying, "Can someone provide accurate information please." Id. Even if the plaintiff meant this document as an appeal, the fact that he did not use an appeal form, did not address the document to a captain or commander and did not request reconsideration of the dismissal of a grievance implies that the plaintiff was not aware of, or did not understand, the appeal process.

There is a genuine dispute of material fact as to whether the plaintiff received a copy of the Inmate Handbook and whether he knew that he had to appeal his denied grievances to exhaust his administrative remedies or knew how to do so. Because of this dispute of fact, summary judgment is not appropriate for defendants Gilbert and Sanchez at this time.

2.    *Officers Peterson and Nowak*

The court allowed the plaintiff to proceed on a claim that on July 11, 2019, when he returned from his Froedtert appointment, Officer Peterson did not call medical staff to evaluate the plaintiff for over ninety minutes. Dkt. No. 17 at 11–12, 24–25. The court allowed the plaintiff to proceed on a claim against Officer Nowak that on July 13, 2019, Nowak did not contact the medical unit, despite the plaintiff's insistence that he was in severe pain and losing mobility in his neck. Id, at 13, 26–27. None of the plaintiff's grievances address either of these incidents. There are no grievances in the grievance log that relate to Officer Peterson's delay in contacting medical staff on July 11, 2019 or Officer Nowak's refusal to contact the medical unit on July 13, 2019. Although the plaintiff filed grievances about

the lack of medical treatment for the injuries he allegedly suffered on July 11, 2019, those complaints are against medical staff, not correctional officers.

The plaintiff averred in his declaration that he filed grievances against Officers Peterson and Nowak. Dkt. No. 96 at ¶¶6, 12. The plaintiff attached to his declaration a request for information that mentions Officer Peterson. Dkt. No. 96-1 at 1. The plaintiff states in his response brief that this request form is another "form[] of grieving." Dkt. No. 97 at 2. But the request says only that the plaintiff spoke with Officer Peterson about his injuries. It says nothing about Officer Peterson refusing to call the medical unit for the plaintiff for ninety minutes. This vague mention of Officer Peterson is not sufficient to put the jail on notice of the plaintiff's specific claim against Officer Peterson.

Even if the request were more specific, it would not suffice to trigger the grievance process for the plaintiff's claim against Officer Peterson. The plaintiff insists that his request forms acted the same as a written grievance, but he cited nothing to support that statement. Dkt. No. 97 at 2. The Seventh Circuit's strict exhaustion rules require that an inmate file a grievance "in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025. The jail requires that inmates who wish to address a problem at the jail, whether against medical staff or a corrections officer, "[c]omplete a written grievance form." Dkt. No. 90-1 at 3. This court has concluded on more than one occasion that a prisoner who files a health services request in lieu of a grievance has not exhausted his administrative remedies under Wisconsin's administrative rules. Dionne v. Majewski, No. 15-C-190, 2016 WL 1050283, at *2 (E.D. Wis. Mar. 16, 2016) (citing Whiteside v. Pollard, No. 10-C-725, 2012 WL 1580430, at *1 (E.D.

Wis. May 4, 2012)). Although the applicable grievance process is the jail's and not the state's, the same conclusion applies. An inmate request is not the same as a grievance and does not serve the same purpose. A request, by its namesake, asks for something: a form, information, medical assistance. A grievance, on the other hand, notifies jail administrators of an issue and provides them "an opportunity to address [that] shortcoming." Glick v. Walker, 385 F. App'x 579, 582 (7th Cir. 2010) (citing Jones, 549 U.S. at 218). To begin the grievance process, the plaintiff needed to file a written grievance form as the jail's handbook provides.[4] If he did not file written grievances against Officer Peterson or Nowak about the issues on which he is proceeding in this lawsuit, he did not *begin* the grievance process, much less exhaust his administrative remedies for his claims against them.

The Seventh Circuit recently has instructed that a plaintiff must "introduce sufficient evidence to demonstrate that there [i]s a genuine issue of triable fact with respect to" his assertion that he properly exhausted his administrative remedies. Lockett v. Bonson, 937 F.3d 1016, 1027 (7th Cir. 2019). But again, "'[t]he exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving.'" Daniels v. Prentice, 741 F. App'x 342, 343–44 (7th Cir. 2018) (quoting Pavey, 663 F.3d at 903). The defendants "need[] to show more than the absence of a grievance in prison records" to meet such a burden. Id. The plaintiff avers that he "filed a grievance on July 11, 2019 against Officer Peterson

_____

[4] As the court has concluded above, the record contains conflicting evidence regarding whether the plaintiff received the Inmate Handbook. But although the plaintiff appears to have filed nothing that resembles an appeal during the relevant period, he filed several inmate grievances. The record contains substantial evidence that the plaintiff knew how to file a grievance.

24

for his conduct on that day" and "filed a grievance on July 14, 2019 against Officer Nowak for his conduct on July 13, 2019." Dkt. No. 96 at ¶14. That those grievances are not in included on the inmate log produced by the defendants, without more, is not a sufficient basis for the court to conclude that the plaintiff did not exhaust his administrative remedies for his claims against Officers Peterson and Nowak. Because there is a dispute of material fact whether the plaintiff properly grieved and exhausted his administrative remedies for his claims against these officers, the court will not grant the defendants' motion for summary judgment on these claims.

The court also notes that the analysis does not end with determining whether the plaintiff filed a grievance against Officers Peterson and Nowak. The plaintiff also avers that he never received a response to the grievances he filed against Officers Peterson and Nowak and therefore could not appeal those grievances. Dkt. No. 97 at ¶¶12–13. If this is the case, and the jail failed to respond to the grievances the plaintiff filed against Officers Peterson and Nowak, the plaintiff may be excused from failing to exhaust his administrative remedies for those claims. See Lewis v. Washington, 300 F.3d 829, 835 (7th Cir. 2002) (citing cases) (remanding claim dismissed for failure to exhaust and encouraging the district court on remand to "consider whether [the plaintiff's] administrative remedies were available in light of the prison officials' failure to respond to some of his grievances and requests"). The court cannot decide this issue without further information. See infra, Section II.C.4.

### 3. *Jail Officer Larsen*

The court allowed the plaintiff to proceed on a claim that on July 15, 2019, Officer Larsen refused to get a wheelchair for the plaintiff, who said he could not walk to the Health Services Unit on his injured foot. Dkt. No. 17 at 14, 29. The defendants incorrectly asserted in their proposed findings of fact that none of the plaintiff's grievances showed any personal involvement by Larsen. Dkt. No. 94 at ¶56. The plaintiff grieved this incident the day it occurred. Dkt. No. 90-3 at 3. That grievance stated that Larsen was escorting the plaintiff from the clinic, that the plaintiff asked if he could be assisted by a wheelchair due to his foot injury and was told no. Id.

That said, a jail representative responded to the grievance and concluded that it was unfounded. Id. at 2. It is undisputed that there is no evidence showing that the plaintiff appealed the denial of his grievance against Officer Larsen to the jail captain or commander. The plaintiff did not mention this grievance or his allegations against Officer Larsen in his declaration.

As with the plaintiff's claim against Gilbert and Sanchez, the question with respect to the plaintiff's claim against Officer Larsen is whether the plaintiff was aware of the appeals process and failed to follow it or whether he was unaware, through no fault of his own, of his need to appeal his denied grievance and how to do so. The court has concluded that there is a genuine dispute as to whether the jail provided the plaintiff a copy of the Inmate Handbook and whether the plaintiff was aware of the process for appealing his denied grievances. The court cannot rule on the defendants' motion with respect to the plaintiff's claim against Officer Larsen until this fact question is resolved.

4.    _Pavey Hearing_

The Seventh Circuit has instructed that, when there are questions of fact regarding whether a plaintiff exhausted the available administrative remedies, the court must conduct an evidentiary hearing to resolve the issue. See Pavey, 544 F.3d at 742. A hearing is required when "the parties' competing written evidence creates a genuine dispute of material fact that must be resolved by making a credibility finding." Winston v. Clarke, 746 F. App'x 561, 563 (7th Cir. 2018). At the hearing, the court "may hear evidence, find facts, and determine credibility. After finding facts, the district court may allow the claim to proceed or dismiss it for failure to exhaust." Wilborn v. Ealey, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted).

Given the conflicting facts, the court finds that an evidentiary hearing is necessary to determine 1) whether the plaintiff filed grievances for his claims against Officers Peterson and Nowak or filed only requests for information and not written grievances, and 2) whether the plaintiff received a copy of the Inmate Handbook and was therefore aware of the appeals process required to exhaust his administrative remedies for his claims against each officer.

## III.   Conclusion

The court **GRANTS** defendant Gilbert and Sanchez's motion to join the County Defendants' motion for summary judgment. Dkt. No. 89.

The court will issue a separate order setting a date and time for an evidentiary hearing to determine whether the plaintiff filed grievances for his claims against Officers Peterson and Nowak and whether the plaintiff received a copy of the Inmate Handbook and/or was aware of the required appeals he

27

needed to file to exhaust his administrative remedies. The court will defer ruling on the defendants' motion for summary judgment until after the evidentiary hearing.

The court **DIRECTS** the Clerk of Court to terminate Corporation Counsel from the docket.

Dated in Milwaukee, Wisconsin this 16th day of February, 2022.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge