UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CLARENCE ALBERT SAFFOLD, III,

      Plaintiff,

v.              Case No. 19-cv-1414-pp

SHANE PETERSON, PETER NOWAK,
JASON LARSEN, CODY GILBERT,
and JOSE SANCHEZ,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 86)**

---

  Clarence Albert Saffold, III, who is representing himself, is proceeding under 42 U.S.C. §1983 on Eighth Amendment claims. On February 16, 2022, the court granted defendants Cody Gilbert and Jose Sanchez's motion to join defendants Shane Peterson, Peter Nowak and Jason Larsen's motion for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies before bringing this lawsuit. Dkt. No. 100. The court determined that there were genuine disputes of fact that precluded a ruling on the defendants' motion for summary judgment. Id. at 19–26. It concluded that under Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008), an evidentiary hearing was necessary to resolve two factual disputes: "1) whether the plaintiff filed grievances for his claims against Officers Peterson and Nowak or filed only requests for information and not written grievances, and 2) whether the plaintiff received a copy of the Inmate Handbook and was therefore aware of

the appeals process required to exhaust his administrative remedies for his claims against each officer." Id. at 27.

On April 27, 2022, the court held the evidentiary hearing virtually via Zoom. Dkt. No. 105. Defense counsel appeared, questioned the plaintiff and provided evidence. The plaintiff provided testimony of his own, and the court questioned him. With this additional evidence, the court is prepared to rule on the defendants' motion for summary judgment.

**I.  Factual Findings**

   A.  Background

The court made the following factual findings in its previous order:

> On July 11, 2019, Officers Gilbert and Sanchez took the plaintiff to a scheduled appointment at the Froedtert Eye Institute. Dkt. No. 94 at ¶4. The defendants detail the events during this appointment as described in the officers' incident report. Id. at ¶¶4–14; Dkt. No. 90-3 at 12–13. The officers placed the plaintiff in a wheelchair, which is standard procedure for all inmates during medical appointments. Dkt. No. 94 at ¶5. Froedtert security escorted the plaintiff and officers to an elevator. Id. at ¶6. While boarding the elevator, the plaintiff's foot bumped the elevator wall. Id. The plaintiff says that his foot made "extensive contact with elevator wall, more than enough to cause severe pain during incident and long after." Dkt. No. 96 at ¶10. The plaintiff did not tell the officers or Froedtert security that the bump hurt him or his foot. Dkt. No. 94 at ¶7.
>
> The officers took the plaintiff to his scheduled doctor's appointment. Id. at ¶8. During the appointment, the plaintiff asked the doctor to take an x-ray of his foot because of the bump in the elevator. Id. The officers thought the plaintiff was joking about the x-ray because "'there clearly was little to no contact that the inmate's foot made with the side of the elevator.'" Id. (quoting Dkt. No. 90-3 at 12). The officers told the plaintiff that, as G4S officials, they could not schedule an x-ray and that nursing staff at the jail would have to schedule the appointment. Id. at ¶10. The remainder of the plaintiff's appointment was without incident. Id. at ¶11.

The officers state in their report that during the drive back to the jail, they "drove normally, with no reported traffic accidents." Dkt. No. 90-1 at 13. They note the plaintiff claimed the officers did not buckle him into his seat and drove recklessly, causing him to suffer an injury. Id.; Dkt. No. 94 at ¶12. The officers state they told the plaintiff he could buckle himself in the same as other inmates and that only inmates wearing special restraints cannot buckle themselves in. Dkt. No. 94 at ¶13. The plaintiff was in a normal belly restraint with handcuffs and ankle restraints, which did not prevent him from buckling himself in. Id. at ¶¶13–14.

. . . .

The jail's Inmate Handbook outlines the grievance and appeal process. Dkt. No. 94 at ¶¶15–16; Dkt. No. 90-1. The handbook states that inmates "may file a grievance" if they believe they "are being treated unjustly or unfairly." Dkt. No. 90-1 at 3. The grievance must address either "an issue personally affecting an inmate in the area of health, welfare, facility operation or inmate services" or "a complaint of oppression or misconduct by an employee." Id. The handbook instructs inmates to "file a grievance only after you have addressed the problem with the pod officer and are not satisfied with the result." Id. (emphasis omitted).

To submit a grievance, inmates are required complete a written grievance form and place the completed form in the grievance box or give it to an officer if the box was unavailable. Id. A jail representative reviews and answers the grievance. Id. The handbook provides the following procedure for appealing a grievance:

> 4. If you are dissatisfied with the result you may appeal the decision by writing supporting documentation including full names of witnesses. The Captain will review and rule on your appeal.
>
> 5. Once the Captain has ruled, and more evidence is available you may make one final appeal to the Jail Commander or his/her designee. This appeal must include all previous writings and supporting testimony and evidence and the new found [sic] information/evidence. This decision/action is final.

Dkt. No. 100 at 5–7.

### B. Testimony from the Evidentiary Hearing

The plaintiff testified that he was booked into the Milwaukee County Jail on May 29, 2019.[1] The plaintiff's Property Log Sheet confirms that booking date. Dkt. No. 96-1 at 4. The plaintiff testified that jail staff searched him, fingerprinted him and provided him a hygiene bag containing a toothbrush, toothpaste and other items. He testified that while staff also provided him jail clothes and bedding, they did not give him an Inmate Handbook. Defense counsel showed the plaintiff a Classification Interview Form from June 2, 2019. Dkt. No. 90-2. The plaintiff agreed that the Form says the plaintiff was given a copy of the Inmate Handbook during "changeover." Id. The plaintiff testified, however, that the Form was incorrect. He noted that he was booked on May 29, 2019—not June 2, 2019—and he was not given a handbook at that time. He agreed that the rest of the information on the form was correct. He suggested that an officer may have filled out his Classification Form a few days after the plaintiff was booked, incorrectly assuming that the plaintiff received a handbook on the May 29, 2019 booking date.

The plaintiff testified that the jail did not post any information about filing grievances. He stated that he was unaware of the process for filing grievances until another inmate, Shawn Lewis, explained that the plaintiff could file a grievance about his complaints against jail staff. The plaintiff eventually filed sixteen grievances about the July 11, 2019 incident, beginning the day of the incident. He agreed that he "frequently" filed grievances but

---

[1] The audio recording of the hearing is on the docket at Dkt. No. 106.

disagreed that the frequency of his filings demonstrated his familiarity with the grievance process. He explained that he knew how to file grievances only because the grievance form itself provides instructions for filling out the form and filing the grievance. The plaintiff testified that he filed grievances "to the best of [his] ability" based on the instructions on the grievance form.

The plaintiff maintained that he filed his first grievance against Officer Peterson on July 11, 2019. See Dkt. No. 96 at ¶6. He testified that Peterson refused the plaintiff's request for medical treatment for his injured foot, so he filed a grievance against Peterson. He testified that he filed this grievance at the same time that he filed another grievance about a medical issue. The medical grievance, dated July 11, 2019 (#19-002004), shows up on the jail's log of the plaintiff's grievances. Dkt. No. 90-2 at 1. The plaintiff testified that he filed both grievances the same way—by returning them to the grievance box at the officer's station. He says that is how he filed all but one of his grievances (the one he filed against Officer Nowak). The plaintiff testified that he did not receive a response to his grievance against Peterson but did receive a response to his grievance about the medical issue.

The plaintiff testified that he filed a grievance against Officer Nowak on July 14, 2019. He said that he first approached Nowak about an issue, but that Nowak gave him a "cold shoulder." The plaintiff said that he wrote the grievance during third shift at the jail, sometime after 9:00 p.m. By that time, he said, he was locked into his cell for the night, so he could not leave his cell and file the grievance in the grievance box. Instead, he slid the grievance

5

underneath his cell door as Nowak passed during rounds. The plaintiff says he was following the instructions on the grievance form to "return the Grievance to the Deputy involved for a response." See Dkt. No. 96-1 at 10. He testified that Nowak took the grievance form and left. The plaintiff told the court that he did not receive a response to this grievance. This grievance does not appear on the jail's log of the plaintiff's grievances, dkt. no. 90-2 at 1, or anywhere in the record.

The plaintiff testified that he did not ask anyone at the jail about appealing his grievances, including the ones he filed against Peterson and Nowak to which he did not receive a response. He testified that he was unaware that there was an appeal process because he never was provided an Inmate Handbook that explained the process for appealing a denied grievance.

Defense counsel questioned the plaintiff about grievance #19-002004, which the plaintiff filed on August 22, 2019. Dkt. No. 90-3 at 53. The grievance begins, "This is in response to Wellpath's response to grievance #'s 19-001687 and 19-001661." Id. The plaintiff filed those grievances on July 15 and 19, 2019. Id. at 1. The plaintiff agreed that he wrote and filed the August 22, 2019 grievance and received a response. Id. at 51. The response was signed by someone whose signature begins with "Capt," which the plaintiff agreed likely meant "Captain." Id. The plaintiff denied that he filed this grievance as an attempt to appeal the denial of his previous grievances. He testified he was "complaining more, complaining again" to receive medical treatment. The plaintiff agreed, however, that his grievance may have had the same effect as

an appeal "depending on the viewer." He agreed that if the jail perceived his grievance as an appeal, then his grievance would have satisfied Steps 1 through 4 of the jail's five-step grievance process.

The plaintiff agreed that he did not appeal the denial of any grievance to the jail commander, as Step 5 of the handbook instructs. He reiterated that he did not follow Step 5 because he never had a copy of the Inmate Handbook and was unaware of *any* step in the grievance process.

The court questioned the plaintiff about the "Prisoner Request" slips that he included with his materials in response to the defendants' motion for summary judgment. Dkt. No. 96-1 at 1–3. The first of these forms is dated July 11, 2019, id. at 1; the second is dated July 17, 2019, id. at 2; and the third is undated, id. at 3. The plaintiff testified that these slips were out of order; the third page (the undated slip) was the second request slip he filed, and the second page (July 17, 2019) was the third one. The plaintiff testified that jail staff told him to contact a lieutenant or captain—"someone above the pod officers." He received the prisoner request slips from the officer's station, filled them out in pencil and gave them to an officer, as he would give an officer personal mail. The plaintiff testified that he handed over all three requests at the same time but received only one response to all three. The plaintiff received the three request slips back with additional writing in red ink that reads, "Fill out a pink [and] white for medical" on one slip, id. at 2, and "Fill out a pink [and] white" on another, id. at 3. The third request (page 2) also has a red line through "5B" in the box labeled "POD" and red writing reading "5D02." Id. at 2.

7

The plaintiff testified that that change reflected his move to a different cell. He testified that those were the only responses he received to his request slips. None of the forms has a name or signature on the bottom in the boxes labeled "Officer," "Responding," "Deputy Signature" or "Sergeant's Review." Id. at 1–3. There is no other indication that the jail received and responded to these forms.

**II.    Analysis and Conclusions**

The court scheduled the evidentiary hearing to resolve two disputes of fact from the parties' briefing on the defendants' motion for summary judgment: 1) whether the plaintiff received an Inmate Handbook that provided instructions about the jail's grievance process, and 2) whether the plaintiff filed a grievance against Officers Peterson and Nowak for their alleged conduct on July 11, 2019.

   A.   Inmate Handbook

As the court explained in the previous order, incarcerated persons are required to exhaust only "available" administrative remedies. Dkt. No. 100 at 20 (citing 42 U.S.C. §1997e(a); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). Administrative remedies may be "unavailable" to an incarcerated person if, for example, jail staff failed to inform him of the grievance process. Id. (citing Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006); and Brown v. Garth-Dickens, No. 16-cv-241-PP, 2018 WL 1695511, at *6 (E.D. Wis. Mar. 30, 2018)). As the court previously noted, it is *the jail's* duty to inform incarcerated persons about the grievance process. Id. (citing Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016)).

The cumulative evidence from the briefing on the defendants' motion for summary judgment and from the evidentiary hearing proves that the plaintiff was booked into the jail on May 29, 2019. He averred in his declaration, and maintained at the hearing, that the jail *did not* provide him an Inmate Handbook at that time or at any time while he was incarcerated there. Dkt. No. 96 at ¶3. Yet his Classification Interview Form, which was completed on June 2, 2019—four days *after* he was booked—says that the jail *did provide him* an Inmate Handbook. Dkt. No. 90-2 at 1. It is conceivable that, several days after the jail booked the plaintiff, an officer completed the classification form and marked that the jail had provided the plaintiff an Inmate Handbook at changeover because that is when the jail usually provides the handbooks to newly incarcerated person. But because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff received an Inmate Handbook. Dkt. No. 100 at 18 (citing Pavey, 544 F.3d at 740–41, and Jones v. Bock, 549 U.S. 199, 216 (2007)). The defendants did not produce any witnesses to say that Inmate Handbooks always are given at changeover. Nor did they produce the jail staff member who was working in intake on May 29, 2019, booked the plaintiff into the jail and, as the defendants assert, provided him a handbook. Nor is there any proof that whoever filled out the classification form on June 2, 2019 gave the plaintiff the Inmate Handbook on May 29, 2019 (or at any other time).

It appears that the defendants mean to argue that the plaintiff appealed the responses to the grievances he filed on July 15 and 22, 2019, by filing his

August 22, 2019 grievance. The defendants argue that because he knew to appeal those two grievances, the plaintiff also knew that he needed to appeal the grievances he filed against defendants Sanchez, Gilbert and Larsen. But the August 22, 2019 grievance the plaintiff filed is not labeled as an appeal—it's on a regular inmate grievance form. Dkt. No. 90-3 at 53. In that grievance, the plaintiff disputes Wellpath's response to his previous grievances and asserts that he did not get ibuprofen until two days after the incident, that the nurses denied him meds and that he thinks they are trying to cover up their failure to treat him. Id. At the end, the plaintiff asks whether someone could provide him with accurate information. Id. The plaintiff testified that he was not trying to appeal through this grievance and did not even know he had to appeal the denial of his previous grievances. He was only grieving further, complaining that the jail was not treating him as he thought he should be treated.

The court finds the plaintiff's testimony credible. If the plaintiff knew that he was required to appeal the denial of his past grievances, and knew *how* to appeal, then he likely would have done so. But as previously noted, "the fact that he did not use an appeal form, did not address the document to a captain or commander and did not request reconsideration of the dismissal of a grievance implies that the plaintiff was not aware of, or did not understand, the appeal process." Dkt. No. 100 at 22. The plaintiff's testimony bolsters the court's interpretation of those events.

The defendants have not demonstrated that the plaintiff received an inmate handbook and therefore knew about the appeals procedure. As a result, the jail's grievance process was unavailable to the plaintiff, and he is excused from not complying with the appeals process for the grievances he filed against defendants Gilbert, Sanchez and Larsen. The court will deny summary judgment for those defendants.

B. Grievances Against Peterson and Nowak

It is undisputed that the jail's log of the plaintiff's grievances does not show he filed a grievance against Officer Peterson on July 11, 2019, or against Officer Nowak on July 14, 2019. There is no proof that the plaintiff filed any grievance against Peterson or Nowak. The only evidence that he filed those grievances is his declaration stating that he did, dkt. no. 96 at ¶¶6, 14, and his testimony from the evidentiary hearing saying that he did.

The court suspects that the request for information the plaintiff filed on July 11, 2019, dkt. no. 96-1 at 1, may be the first "grievance" that the plaintiff filed. But this grievance, if that is what it was intended to be, is not on a grievance form, so the jail likely did not treat it as one. That makes sense because, as the court noted in the previous order, a request for information is not the same as a grievance. Dkt. No. 100 at 23–24. Filing a request for information, even if it is intended to present an inmate's grievances against an officer or about jail conditions, does not suffice for a grievance and does not exhaust administrative remedies under Wisconsin's administrative rules. Id. (citing Dionne v. Majewski, No. 15-C-190, 2016 WL 1050283, at *2 (E.D. Wis.

Mar. 16, 2016); and Whiteside v. Pollard, No. 10-C-725, 2012 WL 1580430, at *1 (E.D. Wis. May 4, 2012)).

Even if the court were to treat this form as a properly filed grievance, the request says only that the plaintiff talked to Peterson about his injuries. It makes no complaint against Peterson and makes no mention of Nowak. It mostly complains about the G4S officials (Gilbert and Sanchez) and a nurse (who is not a defendant). As noted in the previous order, "[t]his vague mention of Officer Peterson is not sufficient to put the jail on notice of the plaintiff's specific claim against Officer Peterson." Id. at 23.

The plaintiff's second request for information, which is undated, suffers from the same deficiencies. This request says nothing about Peterson or Nowak. It again complains about the plaintiff's treatment by Gilbert and Sanchez during his transport to and from the hospital for his medical appointment and about the officers hitting the plaintiff's foot against the elevator wall. Dkt. No. 96-1 at 3. According to the plaintiff's testimony, unknown jail officials responded to his complaint by writing, "[f]ill out a pink [and] white" on his request and returning it to him. Id. This further suggests that jail officials viewed the plaintiff's request as just that—a request for information and/or medical treatment—and not as a grievance. The same is true for the plaintiff's third request, dated July 17, 2019. Id. at 2. Again, this request says nothing about Peterson or Nowak, complains about the injuries the plaintiff allegedly suffered at the hands of Gilbert and Sanchez and requests medical treatment. Id. Jail officials again responded by telling the

plaintiff to "[f]ill out a pink [and] white for medical" and returned the form to him. Id.

Whether these three documents were "grievances," requests for medical treatment or something else, they did not suffice to exhaust the plaintiff's administrative remedies for his claims against Officers Peterson and Nowak. Putting aside that request forms cannot substitute for grievances, and accepting the plaintiff's testimony that he attempted to file these forms as grievances, the requests do not make any allegations or accusations against Peterson or Nowak. The forms did not notify jail administrators of any misconduct or errors by Peterson and Nowak and did not provide Peterson or Nowak "an opportunity to address [that] shortcoming." Dkt. No. 100 at 24 (quoting Glick v. Walker, 385 F. App'x 579, 582 (7th Cir. 2010)). Because the forms did not include sufficient information about the plaintiff's complaints against Peterson and Nowak, they "did not *begin* the grievance process, much less exhaust his administrative remedies for his claims against them." Id.

The plaintiff also testified that he gave something to Nowak through his cell door. But there is no evidence in the record to support the plaintiff's testimony. The plaintiff explained that he received back the request forms discussed above from jail administration, and he presented those forms to the court. But he introduced no evidence showing that he filed anything against Nowak or indicating what that grievance said. The plaintiff may have given something to Nowak through the cell door, but without some evidence of what

13

was on that "something," the court cannot conclude that whatever the plaintiff gave Nowak started the grievance process against Nowak.

There is insufficient evidence showing that the plaintiff filed grievances related to his claims against Petersen and Nowak. The defendants have met their burden to show the plaintiff failed to exhaust his administrative remedies for his claims against them before bringing this suit, and the court will dismiss the plaintiff's claims against Peterson and Nowak without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

### III. Conclusion

The court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment. Dkt. No. 86. The court **DENIES** the motion as to defendants Jason Larsen, Cody Gilbert and Jose Sanchez. The court **GRANTS** the motion as to defendants Shane Peterson and Peter Nowak.

The court **DISMISSES** defendants Peterson and Nowak.

The court will enter a separate order setting deadlines for the parties to conduct discovery and file motions for summary judgment on the merits.

Dated in Milwaukee, Wisconsin this 20th day of May, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**